UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| GENO MUNARI and PENNY MUNARI, <br><br> Plaintiffs, <br><br> vs. <br><br> BENJAMIN FREEMAN; *et.al.*, <br><br> Defendants. | Case No. 2:16–cv–83–RFB–VCF <br><br> **<u>ORDER</u>** <br><br> MOTION TO QUASH PLAINTIFFS' SUBPOENA (DOC. #5) |

    This matter involves Plaintiffs Geno and Penny Munari's (hereafter "the Munaris") civil action against the Defendants. Before the court are movant[1] John Doe's motion to quash Plaintiffs' subpoena (Doc. #5), the Munari's response (Doc. #8), and John Doe's reply (Doc. #9). The court held a hearing at 3:00 p.m. on April 15, 2016. For the reasons stated below, John Doe's motion to quash is denied.

**I. Background**

    On January 14, 2016, the Munaris sued the Defendants. The Munaris allege that the Defendants unlawfully registered, owned, and attempted to sell four domain names. (Doc. #1). The four domains names at issue are: (1) genomunari.com; (2) genomunari.net; (3) genomunari.info; and (4) pennymunari.com. (Doc. #8-5). The Munaris now own the four domain names at issue. (*Id.* at 2). When Geno Munari visited the websites associated with each of the four domain names at issue, he found that each websites contained no information about himself or his wife. (*Id.*). The four websites simply displayed a generic GoDaddy.com webpage. (*Id.*).

---

[1] John Doe states that he is a non-party to this action. (Doc. #5) (stating the he is the "anonymous registrant of the domain names at issue."). For the sake of consistency, the court will refer to John Doe as a non-party.

In January 2016, Geno Munari received a series of emails from "Ben Freeman,"[2] a "private domain consultant," who offered to sell the Munaris the four domain names at issue. (*Id.*). "Freeman" urged the Munaris to purchase the four domain names. (*Id.*). "Freeman" stated that if the Munaris did not purchase the four domain names at issue, he would sell them to an anonymous individual who allegedly wished to "put [the Munaris] dirty laundry online." (Doc. #8-3).

On January 29, 2016, the Munaris served non-parties Domains By Proxy and Google with subpoenas. The Munaris sought information about the then registered owners of the four domain names at issues as well as information about "Ben Freeman." (Doc. #8).

On February 1, 2016, "Bob" called the Munaris' counsel and stated that he was the registered owner of the four domain names at issue. (*Id.*). "Bob" offered to transfer the Munaris the four domain names at issue in exchange for $1,200 per domain name and the withdrawal of the Munaris' subpoenas. (*Id.*). The Munaris declined "Bob's" offer. (*Id.*). "Bob's" counsel later offered to settle this lawsuit in exchange for withdrawal of the Munaris' subpoenas. (*Id.*). The Munaris declined counsel's offer to settle. (*Id.*).

Non-party John Doe now moves to quash the subpoenas served on Domains By Proxy.[3] John Doe argues that the subpoena served on Domains By Proxy does not comply with the Federal Rules of Civil Procedure and infringes on John Doe's First Amendment right to speak anonymously.

/// /// ///

/// /// ///

---

[2] The Munaris allege that "Ben Freeman" is not the real name of the individual who attempted to sell them the four domain names at issue. (Doc. #8). The Munaris also allege "Ben Freeman," "Bob," and movant John Doe are the same individual. (*Id.*).

[3] In his reply, John Doe asks the court to quash the subpoena served on Google. (Doc. #9 at 5 n. 1). As John Doe's request to quash the subpoena served on Google was raised for the first time in his reply, the court will not consider John Doe's request to quash the subpoena served on Google. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("the district court need not consider arguments raised for the first time in a reply brief.")

## II. Discussion

The parties present two issues: (1) whether the Munaris' subpoena to Domains By Proxy should be quashed due the Munaris' failure to comply with the Federal Rules of Civil Procedure and (2) whether the Munaris' subpoena to Domains By Proxy should be quashed on First Amendment grounds.

1. <u>The Munaris' Subpoena on Domains By Proxy Will Not Be Quashed on Procedural Grounds</u>

"A party may not seek discovery from an source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1). Early discovery is permitted "when the [Doe] defendants are persons who have allegedly engaged in wrongful conduct through internet communications or activities, and their identities are unknown to the plaintiff, except for the internet protocol ("IP") addresses assigned to them." *Liberty Media Holdings, LLC v. Swarm of November 15 to December 9, 2010*, Case No. 2:11-cv-637-RLH-GWF, 2011 WL 1768746 at* 2 (D. Nev. May 9, 2011) (permitting plaintiff to serve early subpoenas to non-party internet providers in order to identify Doe Defendants).

The Munaris' subpoenas to Domains By Proxy will not be quashed for the Munais' non-compliance with the Federal Rules of Civil Procedure. The Munaris may serve early subpoenas on non-parties in order to identify unknown defendants. *Id.* The proper procedure for the issuance of a pre-Rule 26(f) conference subpoena would have been for the Munaris to obtain a court order that permitted service of the subpoena. *See id.* The Munaris then should have served the non-party with a subpoena as well as with a copy of the court's order. *See id.*

Here, the Munaris served the subpoenas Domains By Proxy without a court order. John Doe argues that the Munaris' subpoena should be quashed since the Munaris served their subpoena before the Rule 26(f) conference and without a court order. John Doe's argument is unpersuasive. In this

3

instance, the court's interest in a "just, speedy, and inexpensive" resolution of this issue overrides the Munaris' failure to follow proper procedure. *See* FED. R. CIV. P. 1. If the Munaris had moved for a court order that authorized service of their subpoena to Domains By Proxy, the court would have entered such an order. Discovery would be delayed and the cost of litigation increased, if the Munaris' subpoena to Domains By Proxy were quashed now. The Munaris' subpoena to Domains By Proxy will not be quashed for non-compliance with the Federal Rules of Civil Procedure.

2.  The Munaris' Subpoena to Domains By Proxy Will Not be Quashed on First Amendment Grounds

    i.  *John Doe's Registration of the Four Domain Names at Issue is Not Protected By the First Amendment*

"[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate the First Amendment even applies." *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n. 5 (1984).

The registration of a domain name that consists entirely of a plaintiff's name, "clearly does not implicate the Defendant's First Amendment rights." *See Randazza v. Cox*, 920 F.Supp. 2d 1151, 1159 (D. Nev. 2013) (holding that a preliminary injunction that prevented a defendant from registering domain names with the plaintiff's full name did not implicate the defendant's First Amendment rights).

John Doe's registration of the four domain names at issue does not implicate his First Amendment rights. When a defendant is prevented from registering domain names that consist entirely of a plaintiff's name, the defendant's First Amendment rights are not implicated. *See id.* On these facts, the court will not deviate from district precedent.

/// /// ///

        ii.    *The Four Munari Domain Names Are Not "Speech" Protected by the First Amendment*

"'[D]omain names … *per se* are neither automatically entitled to nor excluded from the protections of the First Amendment, and the appropriate inquiry is one that fully addresses particular circumstances presented with respect to each domain name.'" *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quoting *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585-86 (2d Cir. 2000)).

"Although domain names do have a functional purpose, whether the mix of functionality and expression is 'sufficiently imbued with the elements of communication' depends on the domain name in question, the intentions of the registrant, the contents of the website, and the technical protocols that govern the [domain name system.]" *Name.Space, Inc.*, 202 F.3d at 586 (holding that hypothetical domain names such as ".jones_for_president" and ".smith_for_senate" would be protected by the First Amendment").

The four domain names at issue contain insufficient expression to constitute "speech" protected by the First Amendment. John Doe correctly states that domain names are not *per se* excluded from First Amendment protection. *Kremer*, 403 F.3d at 672. This rule does not mean that all domain names are protected by the First Amendment. *See id.* Whether a particular domain name is protected is a fact-specific inquiry. *Name.Space, Inc.*, 202 F.3d at 585. Here, the four domain names are devoid of expressive content. The four domain names at issue do not express any opinion about the Munaris. At most, they indicate that the domain names are owned by the Munaris. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998) (a primary purpose of internet domain names is to identify the owner of the domain name). As the four domain names at issues do not express any opinion

about the Munaris or any other subject, they do not constitute "speech" protected by the First Amendment.

       iii.    *John Doe's First Amendment Right to Speak Anonymously is Not Implicated in This Action*

"It is well established that the First Amendment protects the right to anonymous speech." *Art of Living v. Does 1-10*, Case No. 10-5022, 2011 WL 5444622 at* 3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). "However, the right to anonymity is not absolute." *Id.* "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Id.*

"The court must weigh the rights of the harmed party to expose an anonymous online speaker against the anonymous speaker's First Amendment right of free speech." *Fodor v. Doe*, Case No. 3:10-cv-798-RCJ-VPC, 2011 WL WL 1629572 at* 3 (D. Nev. April 27, 2011). "There are four different standards court use in online defamation cases: (1) the motion to dismiss or the good faith standard; (2) the *prima facie* standard; (3) somewhere between the good faith and prima facie standards; (4) the summary judgment standard." *Id.* (citations omitted). "Although the Ninth Circuit examined these four approaches to anonymous online speech, it did not adopt a single standard to guide lower courts." *Id.*

John Doe's First Amendment right to speak anonymously is not implicated in this motion. At the hearing, John Doe stated that he did not post any information to the websites associated with the four domain names at issue, and he had no intent to post any information to the websites when he owned the four domain names at issue. An act of "self-censorship" is a sufficient injury to confer Article III standing. *See Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Here, John Doe lacks standing to assert a violation of his First Amendment rights. John Doe neither

spoke nor contemplated speaking on the websites associated with the four domain names at issue. Without an act of speech or an act of self-censorship, John Doe cannot allege a violation of his First Amendment rights. *See id.*

John Doe's reliance on *Music Grp. Macao Commercial Offshore Ltd. v. Does*, is misplaced. 82 F.Supp, 3d 979 (N.D. Cal. 2015). In *Music Grp.*, the plaintiffs sued a group of unnamed defendants for defamation based on allegedly defamatory statements the defendants made using anonymous Twitter accounts. *Id.* at 982. The *Music Grp.* defendants' First Amendment rights were directly implicated as the plaintiffs sought to hold the defendants liable for their anonymous Twitter comments. *Id.* at 983. Here, the Munaris do not assert that John Doe is liable for content or contemplated content on any website. (Doc. #1).

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that John Doe's motion to quash the Munaris' subpoena on Domains By Proxy (Doc. #5) is DENIED.

IT IS SO ORDERED.

DATED this 19th day of April, 2016.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE